United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD ORTIZ,
    Plaintiff,

v.

NANCY A. BERRYHILL,
    Defendant.

Case No. 18-cv-05341-DMR

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 17, 18

Plaintiff Richard Ortiz moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Ortiz not disabled and therefore denied his application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. The Commissioner cross-moves to affirm. For the reasons stated below, the court grants Ortiz's motion, denies the Commissioner's cross motion, and remands this case for further proceedings.

## I. PROCEDURAL HISTORY

Ortiz filed an application for Social Security Disability Insurance (SSDI) benefits on August 6, 2014, alleging an onset date of January 1, 2012. Administrative Record ("A.R.") 287-90. The application was initially denied on December 19, 2014 and again on reconsideration on May 22, 2015. Administrative Record ("A.R.") 136-41, 143-48. On July 20, 2015, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). A.R. 149-50. ALJ Arthur Zeidman held a hearing on August 14, 2017. A.R. 48-103.

The ALJ determined that Ortiz has engaged in substantial gainful activity as an Uber driver since September 2015. A.R. 20, 21. However, he found that Ortiz had not engaged in substantial gainful activity from his alleged onset date until September 2015. A.R. 21. Therefore, the ALJ's disability findings address the period between January 2012 through September 2015. A.R. 21.

After the hearing, the ALJ issued a decision finding Ortiz not disabled for the relevant time period. A.R. 15-33. The ALJ determined that Ortiz has the following severe impairments: degenerative disc and facet disease of the lumbar spine and left hip degenerative joint disease. A.R. 21. The ALJ found that Ortiz retains the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c). A.R. 22.

The Appeals Council denied Ortiz's request for review on June 28, 2018. A.R. 1-6. The ALJ's decision therefore became the Commissioner's final decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Ortiz then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

The court has reviewed the entire record in this case. For the purposes of brevity, this

opinion contains only the facts that are relevant to the court's decision.

### III. ISSUES PRESENTED

As previously noted, the scope of this appeal is limited to the relevant time period covered by the ALJ's determination; namely, January 2012 through September 2015. Ortiz argues that the ALJ erred in (1) weighing the medical opinions; (2) making an adverse credibility finding; and (3) conducting the step five analysis.

### IV. DISCUSSION

#### A. Medical Opinions

Ortiz argues that the ALJ erred in rejecting portions of the opinions by the state agency medical examiner, Edie Glantz, as well as the opinions of the state agency medical consultants.

##### 1. Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id*.

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick*, 157 F.3d at 722. A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported

by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citation omitted). "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa*, 143 F.3d at 1244. An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

### 2. Analysis

#### a. Glantz Opinion

State agency medical examiner Dr. Glantz examined Ortiz on two separate occasions. On October 9, 2014, Dr. Glantz examined Ortiz and observed that Ortiz was in "no acute distress" and "moves about the room without difficulty." A.R. 648. She also noted that Ortiz was able to get up out of a chair without using his arms and could squat halfway to the floor and stand back up on his own. A.R. 648. Ortiz experienced mild lumbar paraspinal muscle pain upon palpitation. A.R. 650. Dr. Glantz tested Ortiz's muscle strength at 5/5 through all four extremities. A.R. 650. She assessed the following exertional limitations: standing/walking for up to six hours; sitting for up to six hours; and lifting/carrying 50 pounds occasionally and 25 pounds frequently. A.R. 650. Dr. Glantz opined that Ortiz can do any postural and manipulative activities frequently. A.R. 650. She wrote that

Ortiz "should avoid working around unprotected heights [and] around heavy machinery while on Norco because of potential side effects." A.R. 651.

Dr. Glantz examined Ortiz again on November 1, 2016. She found that Ortiz was able to get on and off the exam table, squat, and bend forward without difficulty and that Ortiz could stand up without using his arms. A.R. 753. She again assessed Ortiz's muscle strength at 5/5 throughout all four extremities and observed that there were no paravertebral muscle spasms or tenderness. A.R. 755. Dr. Glantz assessed the same exertional limitations as she did previously, but found additional postural and environmental limitations. With respect to postural limitations, Dr. Glantz stated that Ortiz was limited to occasionally climbing ladders, scaffolds, and ropes, and should avoid those activities while experiencing pain because it could potentially be distracting. A.R. 749, 756. She assessed an environmental limitation restricting Ortiz from working at unprotected heights for the same reason. A.R. 756. Because Dr. Glantz's assessed limitations are not contradicted by another physician,[1] the ALJ was required to provide "clear and convincing reasons" for rejecting her opinion. *Lester*, 81 F.3d at 830

The ALJ gave "substantial but partial weight" to Dr. Glantz's assessments. He adopted Dr. Glantz's exertional limitations; namely the sitting, standing, walking, lifting, and carrying restrictions. However, the ALJ found that the postural limitations assessed by Dr. Glantz were not consistent with the medical evidence, citing "absence of range of motion limitations in the lumbar spine, [Ortiz's] minimal pain on palpation, and good ability to sit for extended periods." A.R. 24. The Commissioner does not explain, nor is it obvious, how these reasons relate to Dr. Glantz's postural limitations, which solely address climbing ladders, scaffolds, and ropes. First, the ALJ did not acknowledge that Dr. Glantz imposed the climbing limitations because Ortiz could be distracted by pain, which poses a significant safety concern. Second, there is no logical connection between the ALJ's stated reasons and the limitations imposed. Ortiz's ability to sit for extended periods does not contradict a limitation on climbing a ladder. Similarly, Ortiz's range of motion in his spine does

---

[1] As explained below, the state agency medical consultants did not assign postural limitations for the period of January 10, 2012 to May 31, 2014, but did limit climbing ladders, ropes, and scaffolds to "occasionally" for the period from June 1, 2014 onward. A.R. 112-15, A.R. 125-31. Accordingly, Dr. Glantz's opinion as to those specific limitations is not contradicted.

5

not contradict his ability to climb ladders without being distracted by pain. It is also not clear that "minimal pain on palpation" during a one-time physical examination undermines the finding that Ortiz cannot reliably climb ladders without pain while engaged in ongoing, active work. Accordingly, the ALJ did not give clear and convincing reasons to reject Dr. Glantz's postural limitations.

The ALJ also discounted Dr. Glantz's assessment of environmental limitations restricting Ortiz from working at unprotected heights. The ALJ explained that the record shows Ortiz's "complaints of syncope during the relevant period are rare, and possibly attributed to his lack of food and/or dehydration, as opposed to his severe impairments." A.R. 24. However, Dr. Glantz did not impose environmental limitations on the basis of Ortiz's prior syncopal episodes. In her October 2014 opinion, Dr. Glantz wrote that Ortiz should not work at unprotected heights due to side effects from his medications. A.R. 651. In the November 2016 opinion, she stated that he should not work at unprotected heights because he may become distracted by pain. A.R. 756. Since the ALJ's reason did not address the basis for the environmental limitations assessed by Dr. Glantz, it is not a clear and convincing reason to discount her opinion.

For the foregoing reasons, the ALJ erred in discounting Dr. Ortiz's opinion as to the postural and environmental limitations she assessed.

### b. State Agency Medical Consultants

State agency medical consultant G. Lee, M.D., reviewed the medical record on December 11, 2014. Dr. Lee assessed two RFCs: one covering the period from January 10, 2012 to May 31, 2014, and one from June 1, 2014 to the date of his decision, December 18, 2014. For the first RFC, Dr. Lee wrote that Ortiz could lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk for six hours in an eight-hour workday and sit six hours in a normal workday. A.R. 114. Dr. Lee opined that Ortiz could frequently perform all postural activities during that time period. A.R. 114-15. The second RFC, covering the period from June 1, 2014 onward, is more restrictive: Dr. Lee increased the exertional limitations to lifting/carrying 20 pounds occasionally and 10 pounds frequently. A.R. 112-13. For the postural limitations, Dr. Lee stated that Ortiz could only occasionally crouch, stoop, and climb ladders, ropes, and scaffolds. A.R. 113. S. Garcia, M.D.,

reviewed the record on reconsideration and largely adopted Dr. Lee's RFC assessments, except Dr. Garcia added an environmental limitation restricting Ortiz from working at unprotected heights due to his history of syncope. A.R. 125-31. Both opinions limited Ortiz to "light" work for the latter time period. A.R. 116, 130.

The ALJ misleadingly stated that the state agency consultants limited Ortiz to "medium" work with frequent postural activities. This statement is only true for the RFCs covering the earlier period, from January 10, 2012 to May 31, 2014. Accordingly, it does not appear that the ALJ considered the state agency medical consultants' opinions for the later period covering June 1, 2014 to December 18, 2014, which includes a portion of the period relevant to this case.[2] That error is not harmless. Had the ALJ recognized that two state agency consultants advised limiting Ortiz to "light" work for the later time period, he may have found a more restrictive RFC. On remand, the ALJ must reconsider the opinions of Dr. Lee and Dr. Garcia insofar as they relate to the time period relevant to this case.

In sum, the ALJ erred in weighing the medical opinions. On remand, the ALJ must reevaluate the opinions of Drs. Glantz, Lee, and Garcia, and assign them weight in a manner consistent with the regulations and this order.

### B. Remaining Arguments

Ortiz argues that the ALJ erred in making an adverse credibility determination and in conducting the step five analysis. The court does not reach these arguments in light of its conclusion that the ALJ erred in weighing the medical opinions. First, these errors may have impacted the ALJ's ultimate conclusion that Ortiz's testimony is not completely supported by the medical evidence. For example, if the ALJ revisits the medical opinions and finds it appropriate to assess a more restrictive RFC, he may find that Ortiz's testimony is supported by the medical evidence. Second, Ortiz's argument that the ALJ erred in eliciting VE testimony is moot. If the ALJ assesses a different or more restrictive RFC, he must pose new hypotheticals to the VE based on the new RFC determination.

---

[2] As stated above, the relevant time period in this case is January 2012 through September 2015.

On remand, the ALJ should revisit the credibility and step five issues.

## V. CONCLUSION

For the foregoing reasons, the court grants Ortiz's motion, denies the Commissioner's cross-motion, and remands this case for further proceedings.

**IT IS SO ORDERED.**

Dated: March 20, 2020

Donna M. Ryu
United States Magistrate Judge